IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LINDA S. DANT, | : | Case No. 3:11-cv-139 |
| Plaintiff, | | District Judge Walter H. Rice |
| | : | Magistrate Judge Michael J. Newman |
| vs. | | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1]  THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE REVERSED; (2) THIS CASE BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff Linda Dant ("Plaintiff") was "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and/or Disability Widow's Benefits ("DWB")[2].

This case is before the Court upon Plaintiff's Statement of Errors (doc. 12), the Commissioner's Memorandum in Opposition (doc. 16), Plaintiff's Reply (doc. 18), and the administrative record.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] "Section 402(e) of the Social Security Act provides disability benefits to a widow if (1) she is the widow of a wage earner who died fully insured, (2) she is between the ages of fifty and sixty, (3) she is disabled, and (4) her disability is expected to result in death or to last for a continuous period of not less than twelve months."  *Dorton v. Heckler*, 789 F.2d 363, 365 (6th Cir. 1986).

## I. BACKGROUND

### A. Procedural History

Plaintiff filed her applications for DIB, SSI and DWB on February 9, 2006, asserting that she has been under a "disability" since January 30, 2006. Tr. 94-96, 121-23. She claims disability due to "heart [condition(s)], fibromyalgia, diabetes, depression, and thyroid deficiency." Tr. 166.

Following initial administrative denials of her applications, Plaintiff received a hearing before ALJ James Norris on January 22, 2009. Tr. 1246-80. In April 2009, ALJ Norris issued a written decision, concluding that Plaintiff was "not disabled."[3] Tr. 19-35. Specifically, the ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant meets the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3. The prescribed period ended on August 31, 2008.

4. The claimant has not engaged in substantial gainful activity since January 30, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

5. The claimant's "severe" impairments include coronary artery disease, left shoulder problems, left-sided carpal tunnel disease, and degenerative disc disease of the neck and low back (20 CFR 404.1520(c) and 416.920(c)).

---

[3] There are two decisions by the ALJ in the record – one dated April 1, 2009 and the other April 23, 2009 – but they appear to be identical other than the date. *See* tr. 19-35, 42-58. In fact, Plaintiff states in her Statement of Errors that "the decisions appear to be identical in terms of reasoning and conclusions." Doc. 12 at PageID 43. The Commissioner also recognized that there were two different decisions, but did not provide an explanation. *See* doc. 16 at PageID 67 n. 1. The Court will cite to the April 23, 2009 decision (tr. 19-35) as that was the decision the Appeals Council referred to. *See* tr. 9.

6. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

7. Accordingly, after consideration of the entire record, the Administrative Law Judge finds that the claimant retains the residual functional capacity to lift and carry up to ten pounds occasionally, and five pounds frequently, sit for up to six hours total in an eight-hour work day, and to stand-walk in combination for up to two hours total in an eight-hour work day. She could occasionally perform overhead reaching.

8. The claimant is capable of performing past relevant secretarial work, as generally performed in the national economy. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

9. The claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2006, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 21-35.

On March 24, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. Tr. 9-12; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then timely filed this appeal on April 27, 2011. Doc. 2.

**B. Administrative Hearing**

At the administrative hearing, the testifying medical expert ("ME") Karl Manders, M.D., a neurosurgeon, questioned Plaintiff regarding her physical impairments.[4] He first asked about her shoulder. Plaintiff testified that she had her second surgery on her left shoulder in 2008. Tr. 1249-50. She reported that she does not undergo physical therapy, but receives cortisone shots, and will eventually need a left shoulder replacement. Tr. 1250. Thus, based on the medical

---

[4] The administrative hearing took place in Indianapolis, Indiana, and had a different format than the typical hearings held in Dayton, Ohio. *See* tr. 1246-80.

records and this testimony, Dr. Manders opined that Plaintiff's left shoulder was "significantly impaired." *Id.*

Dr. Manders also questioned Plaintiff regarding her cardiovascular disease. Plaintiff testified that she has had three stents in her coronary arteries – the last in March 2005. Tr. 1251. She still has small coronary artery vessel disease that is not large enough to stent. *Id.* She disclosed that she takes four types of medication for her heart condition, including nitroglyercein. Tr. 1252. Plaintiff further advised that her walking is "very limited" due to her heart problems, back, hips and legs. Tr. 1254. She advised she can sit for thirty minutes at one time. *Id.*

Dr. Manders then testified that Plaintiff may meet a Listing due to her "multiplicity of problems," and discussed several Listed Impairments in sections 1.00 (musculoskeletal system) and 4.00 (cardiovascular system). *See* tr. 1255-57. Ultimately, Dr. Manders did not find a Listing that Plaintiff met, and he failed to give a definitive opinion whether her impairments medically equaled any Listing. *See id.* He stated "there's no question" that she has "absolute problems with the shoulder . . . and with the heart," and opined that, accordingly, Plaintiff can perform only sedentary work. Tr. 1257-58. Dr. Manders advised Plaintiff is "not a very functionally capable individual . . . [s]he could sit for periods, have to get up and maybe move around and sit again." *Id.*

Additionally, Jack Thomas, Ph.D., a licensed clinical psychologist, testified as a ME regarding Plaintiff's mental impairments. Based on his review of Plaintiff's medical records, he found that Plaintiff has depressive disorder, not otherwise specified. Tr. 1259. He stated that the

clinician's notes in the record generally report her GAF score in the mild-to-moderate range.[5] *See* tr. 1260-62. He further testified that Plaintiff's depressive disorder was chronic, but not severe. Tr. 1263.

Plaintiff was then examined by her attorney. She testified that she stopped working as the county coordinator for Community Action of Southeastern Indiana in January 2006 due to her heart condition. Tr. 1264. She disclosed that her nitroglycerine medication causes her to have headaches. Tr. 1265-66. Plaintiff further testified that she cannot lift her left arm above her head and therefore has difficulty caring for herself, *i.e.,* getting dressed and styling her hair. Tr. 1266-67. She has also had surgery on her right shoulder. Tr. 1267. Accordingly, she reported that she cannot lift anything with her left arm, and no more than a gallon of milk with her right arm. *Id.*

Plaintiff testified that she suffers from a pain condition as well. She reported that she has back pain that radiates into her legs. Tr. 1268. On a ten-point pain scale, Plaintiff rated the pain in her back and legs as an eight, and in her shoulders as a six. Tr. 1268-69. She takes pain medication. Tr. 1269. Due to this pain, Plaintiff estimated that she can sit for fifteen to twenty minutes, but then must stand and walk for approximately five minutes, and then may return to sitting for another fifteen to twenty minutes. Tr. 1269-70. She reported that she can perform this cycle two or three times, but then must lie down. Tr. 1270. At home, she spends at least two or three hours every day lying down. Tr. 1271. Plaintiff uses a cane for walking when she goes out. *Id.* She cannot stand for more than ten minutes. Tr. 1272. Due to swelling in her feet and ankles, Plaintiff has to elevate her legs above her heart at least twice a day for thirty to forty

---

[5] "GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r of Soc. Sec.,* 61 F. App'x 191, 194 n.2 (6th Cir. 2003).

minutes, as recommended by her doctor.  Tr. 1272-73.

Plaintiff additionally testified that she has pain that radiates from her shoulders into both hands, and her hands cramp.  Tr. 1274.  She has had two surgeries for carpal tunnel syndrome.  *Id.*  As a result, she had to stop playing the piano, and her ability to type/write is limited.  *Id.*

Next, a vocational expert ("VE"), Michael Blakenship, testified.  He reported that Plaintiff has past relevant work as a secretary (a skilled, sedentary position with a specific vocational preparation (SVP) rating of 6).[6]  Tr. 1276.  On cross examination by Plaintiff's counsel, the VE testified that Plaintiff cannot perform work as a secretary (1) if she needs to elevate her legs above her heart, or (2) if she is precluded from typing due to pain and cramping in her hands.  Tr. 1278-79.

## II. APPLICABLE LAW

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of

---

[6] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."   SSR 00-4p, 2000 SSR LEXIS 8, at *7-8, 2000 WL 1898704, at *3 (Dec. 4, 2000).

choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

      5.      Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

The Court finds that the ALJ committed a procedural error at Step Three of his analysis – determining that Plaintiff "does not have an impairment or combination of impairments that meets of medically equals" one of the Listings of Impairments, located at Appendix 1 to Subpart P of the regulations. *See* tr. 24-34. A claimant who meets or medically equals one of these Listed Impairments is conclusively "disabled" and entitled to benefits. 20 C.F.R. §§ 404.1520 (a)(4)(iii), 416.920(a)(4)(iii). A claimant's impairment(s) medically equals a Listed Impairment when "it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).[7] At the administrative hearing level, the ALJ is responsible for deciding medical equivalence. 20 C.F.R. §§ 404.1526(e), 419.926(e); *see also* SSR 96-6p, 1996 SSR LEXIS 3, 1996 WL 374180, at *3 (July 2, 1996). In making that determination, the ALJ must review the entire record and the medical opinions of State agency consultants, and

---

[7] Specifically, the regulations state that "medical equivalence" can be found in three ways: (1) the claimant has a Listed Impairment but does not exhibit the specified severity or findings, yet has "other findings" that are "at least of equal medical significance" to the criteria; (2) the claimant has a non-listed impairment that is "at least of equal medical significance" to a listed impairment; or (3) the claimant has a combination of impairments which do not individually meet a Listed Impairment, but are "at least of equal medical significance" to a listing when viewed in totality. 20 C.F.R. §§ 404.1526, 416.926.

compare that evidence with the criteria for the relevant Listings. *See* 20 C.F.R. §§ 404.1526(c), 416.926(c); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414-15 (6th Cir. 2011).

In the present case, the testifying medical expert, Dr. Manders, considered Listings 1.01 and 4.04 and, though he did not find Plaintiff met these Listings, he indicated her impairments may be equivalent to at least one of them (specifically, Listings 4.04A and 4.40C). *See* tr. 1255-57. However, the ME did not reach a conclusion on the issue of medical equivalence, claiming it was the ALJ's decision to make. Tr. 1257. Plaintiff argues the ALJ erred because he was required to elicit further testimony from the ME regarding medical equivalence. *See* doc. 12 at PageID 50-52. The Court finds this argument well-taken.

In his decision, the ALJ acknowledges that ME Dr. Manders suggested Plaintiff might equal a Listing:

> [O]f note, at the hearing Dr. Manders, the medical expert, testified that the claimant's coronary problems, combined with her shoulder problems, "might" medically equal the requirements of Listing 4.04A. However, he gave no clear opinion on this matter, stating this was a matter for the Administrative Law Judge to decide. In fact, Social Security Rulings and longstanding policy provide that the opinion of a medical or psychological consultant designated by the Commissioner – such as a medical expert – is "required" for an Administrative Law Judge to find that an impairment, or combination of impairments, medically equals a listing (Social Security Ruling 96-6p).
> In this case, since the medical expert was unable to clearly state that the claimant's combined coronary and should impairments medically equaled a listing, the undersigned is unable to make such a finding of medical equivalence. Further, such a finding does not even seem consistent with the clinical facts of the case, as summarized above. Accordingly, for all of the foregoing reasons, the claimant's coronary impairment, whether singly or in combination with any other impairment, does not meet or medically equal any of the requirements under Listing 4.04 or any other impairment listed in Appendix 1.

Tr. 24-25. The ALJ ended his analysis – that Plaintiff did not medically equal Listing 4.04 – without explaining which criteria Plaintiff failed to satisfy.[8] On the other hand, however, the ALJ

---

[8] Listing 4.04 is for ischemic heart disease. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 4.04.

9

discussed whether Plaintiff met or medically equaled Listings 1.02B (major dysfunction of a joint) and 1.04 (disorders of the spine), citing to specific medical evidence, but ultimately determined she did not. *See* tr. 25.

Because Social Security proceedings are "inquisitorial rather than adversarial," the ALJ has "a duty to investigate the facts and develop arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). As the ALJ noted in his decision, "longstanding policy" requires the ALJ to obtain and evaluate a medical opinion from a State agency consultant on the issue of medical equivalence. SSR 96-6p, 1996 WL 374180, at *4. Here, the ALJ correctly solicited a Medical Expert's opinion on the issue of equivalence, but failed to fulfill his burden because he did not obtain a definitive answer from him. The ALJ further erred because he did not properly analyze whether Plaintiff medically equals Listing 4.04, and instead stated in a conclusory manner that such a finding would be inconsistent with the record. *See* tr. 25. This amounts to reversible error.

Social Security Ruling 96-6p requires an ALJ to obtain medical expert testimony on the issue of medical equivalence when, in the ALJ's opinion, "the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable." SSR 96-6P, 1996 WL 374180, at *4. Here, the Court concludes that the ME's testimony alone reasonably raises the question as to whether Plaintiff medically equals Listing 4.04.[9] Therefore, pursuant to Social Security Ruling 96-6p, the ALJ was required to either (1) obtain a definitive answer on the issue of medical equivalence from the testifying ME; or (2) obtain a medical opinion from a different ME. Accordingly, the Court recommends that the ALJ's non-disability finding

---

[9] The Court does not intend to express an opinion whether Plaintiff meets or medically equals Listing 4.04, but rather finds there was sufficient evidence for the ALJ to inquire further, and obtain a definitive medical opinion whether such a finding was warranted.

10

be reversed, and the matter be remanded for further development of the record. *See Bowen*, 478 F.3d at 746 ("[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right); *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (noting that Social Security Rulings are binding); *cf. Johnson v. Barnhart,* 66 F. App'x 285, 288-89 (3d Cir. 2003) (determining that the ALJ's decision should be reversed for failing to consult a Medical Expert as required by SSR 96-6p); *Diehl v. Barnhart*, 357 F. Supp. 2d 804, 818 (E.D. Pa. 2005) (same); *Maniaci v. Apfel*, 27 F. Supp. 2d 554, 558-59 (E.D. Pa. 1998) (finding the ALJ failed to adequately develop the record when the evidence "fairly raised[d] the question" of whether the claimant met a Listing, yet did not obtain Medical Expert testimony on the issue); *Honeysucker v. Bowen*, 649 F. Supp. 1155, 1158-60 (N.D. Ill. 1986) (same).

Additionally, the ALJ's decision should be reversed because he failed to adequately explain why Plaintiff's impairments are not medically equivalent to Listing 4.04. *See* tr. 25. In similar circumstances – where the ALJ failed to explain his conclusion that the claimant did not meet a Listing – the Sixth Circuit determined the ALJ committed reversible error, explaining:

> In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000). As the Third Circuit explained, "[b]ecause we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning" supporting the determination that Reynolds' severe impairments do not meet or medically equal a listed impairment. *Burnett*, 220 F.3d at 120.

*Reynolds*, 424 F. App'x at 416.

The same analysis applies here. As noted above, the ALJ did not demonstrate that he compared the medical evidence with the requirements of Listing 4.04 in his decision "in order to facilitate meaningful judicial review." *See id.* Accordingly, remand is also warranted on that basis.

Finally, the Court notes that the ALJ's error was not harmless because had the ALJ found that Plaintiff medically equaled Listing 4.04 at Step Three, no more analysis would have been necessary; Plaintiff would have been found disabled and entitled to benefits. *Id.* Moreover, given the facts of this case, a remand is "not merely a formalistic matter of procedure, for it is possible" that, based on the medical evidence, that Plaintiff could medically equal a Listed Impairment. *See id.*

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's first assignment of error is well-taken.[10] This matter should be remanded to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g). On remand, the Commissioner should obtain an updated opinion from a Medical Expert – Dr. Manders or another qualified medical professional – whether Plaintiff's impairments are medically equivalent to any Listing.

---

[10] In light of this finding, it is not necessary to address Plaintiff's remaining alleged errors – that the ALJ's (1) RFC finding and (2) finding that Plaintiff can perform her past relevant work – are unsupported by substantial evidence. *See* doc. 12 at PageID 52-57.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The ALJ's decision be **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

August 8, 2012                                  s/**Michael J. Newman**
                                                United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).